IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHNNY CAMPBELL, LEROY LINDSEY,
EDWIN ROADS, and R. LEROY ARELLANO,

      Plaintiffs,

vs.                                  No. CIV 97-1520-MV/RLP

CITY OF ALBUQUERQUE, et. al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion to Amend Complaint, filed October 20, 1998 **[Doc. 32]** and on Defendants' Motion to Dismiss with Prejudice, filed October 30, 1998 **[Doc. No. 36]**. The Court, having considered the moving papers, relevant law, and being otherwise fully informed, finds that the Motion to Amend is well taken and will be **GRANTED** and that the Motion to Dismiss is not well taken and will be **DENIED**, as explained below.

## BACKGROUND

Plaintiffs Johny Campbell, Leroy Lindsey, Edwin Roads and R. Leroy Arllano are all inmates at the Bernalillo County Detention Center ("BCDC"). The present cause of action alleges, pursuant to 42 U.S.C. § 1983, violations of Plaintiffs' federal and state constitutional rights as a result of physical assaults alleged to have been committed against Plaintiffs by several correctional officers named in the Complaint. The Complaint also names as Defendants the City of Albuquerque ("City"), Martin Chavez, former Mayor of Albuquerque, Bernalillo County Commissioners Ken Sanchez, Tom Rutherford, Steve Gallegos, and Les Houston, and Director of BCDC, Mike Sisneros

(collectively the "Supervisory Defendants"). All Plaintiffs have reached a settlement with Defendants and voluntarily dismissed their claims with the exception of Johny Campbell.

The Complaint and the proposed Amended Complaint state that Campbell was assaulted by several correctional officers after requesting to speak with a supervisor and refusing to return to his cell.[1] According to the Complaint and Amended Complaint, correctional officers sprayed Campbell in the face with pepper spray, handcuffed him and dragged him to an elevator. In the elevator, the officers punched Campbell in the face, kicked him in the head and ribs, and called him names. The Albuquerque Police were called to investigate the incident. Plaintiff was then "cleaned up by a nurse" and an injury to his lip was stitched. At that time, a correctional officer again punched Campbell in the face and a second officer twisted his wrist while rearranging the handcuffs. Plaintiff was not taken to the hospital for medical treatment until three days later. As a result of the assault, Plaintiff continues to suffer blurred vision in his left eye, loss of hearing, and other physical and emotional difficulties.

The proposed Amended Complaint further alleges that the City and the Supervisory Defendants are legally responsible for the stated violation of Campbell's constitutional rights as supervisors of BCDC and the correctional officers employed there. The Amended Complaint states that the Supervisory Defendants initiated and/or acquiesced in policies, practices, procedures and/or customs which were the "moving force and/or the casual link to the Constitutional deprivations" complained of. Amended Complaint, ¶ 15. Specifically, the Amended Complaint alleges that: (1) the Supervisory Defendants have "initiated, approved, enforced, and pursued" practices, policies and procedures at BCDC which include the physical and verbal abuse of inmates and the refusal to grant

---

[1] Because Campbell is the only remaining Plaintiff, the Court will not review the facts alleged with regard to the other named Plaintiffs.

inmates access to medical care and legal counsel, Amended Complaint ¶ 31-32; (2) the Supervisory Defendants have adopted and pursued policies and practices for investigating allegations of abuse and disciplining officers which have allowed abusive correctional officers to stay on the job and have encouraged the physical abuse of inmates by skewing the investigative process and insulating officers from liability or punishment for their actions, Amended Complaint ¶ 23-25, 31, 33-34; (3) the Supervisory Defendants have adopted and applied practices and procedures which result in inmates being housed with more dangerous individuals and without adequate supervision, Amended Complaint ¶23, 32; and (4) the Supervisory Defendants have failed to properly train correctional officers at BCDC, Amended Complaint ¶ 30, 35. The Amended Complaint further alleges that the Supervisory Defendants "acted intentionally, or at least with deliberate indifference, regarding these policies, procedures, customs and/or practices." Amended Complaint ¶ 27, 36.

Plaintiff filed his Motion to Amend the Complaint on October 20, 1998, along with a notice that Defendants had failed to respond to the motion within the proscribed time period. The City and the Supervisory Defendants filed their Motion to Dismiss with Prejudice on October 30, 1998, with a response from Plaintiff as a packet. In their Memorandum, the City and the Supervisory Defendants argue that the original Complaint fails to state a claim against them because the Complaint fails to allege sufficient facts on which to base municipal or supervisory liability for the stated Constitutional violation. In the reply in support of their Motion to Dismiss, the City and the Supervisory Defendants assert that the proposed Amended Complaint also fails to allege sufficient facts to establish municipal or supervisory liability, though Defendants fail to elaborate on this argument.

## STANDARD OF REVIEW ON MOTION TO DISMISS

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

Because Defendants failed to file a response to Plaintiff's Motion to Amend the Complaint within the time prescribed, Defendants are deemed to consent to the granting of the motion. D.N.M.

LR-Civ. 7.6.[2] Therefore, the Court will grant the motion with the understanding that the Amended Complaint merely conforms the factual allegations to the issues and events which formed the basis of this law suit from the outset. Discovery will remain closed as no new defendants or issues are presented. Accordingly, the Court will address solely the sufficiency of the Amended Complaint in ruling on Defendants' Motion to Dismiss. As noted above, the Defendants assert that the Amended Complaint fails to allege sufficient facts to establish liability on the part of either the City or the other Supervisory Defendants.

In general, only "persons" can be liable under § 1983, which states in pertinent part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . ." 42 U.S.C. § 1983. The Supreme Court has expanded the definition of "persons" under § 1983 to include municipalities and other local governmental units. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978).

A municipality can be held liable under 42 U.S.C. § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. In addition, liability may arise against a municipality for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the

---

[2]In their Reply in support of their Motion to Dismiss, Defendants for the first time assert that amendment of the Complaint should not be allowed because discovery is already closed. This is not the proper means of responding to a motion to amend. D.N.M. LR-Civ. 7.6. The Court, however, had already taken this issue into consideration, as noted in the body of this opinion.

body's official decisionmaking channels." *Id*. at 690-91. On the other hand, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* 436 U.S. at 691. Moreover, the plaintiff must demonstrate that the city's policy or decision indicates a "deliberate indifference" to the risk of the violation of a particular constitutional or statutory right. *See, Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 117 S. Ct 1382, 1390-2 (1997) (applying "deliberate indifference" standard in hiring context); *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (applying "deliberate indifference" standard in training context). Finally, the plaintiff must show a direct casual connection between the custom or policy and the harm suffered by the plaintiff. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Similarly, to establish liability of a supervisor in a § 1983 action, a plaintiff must show that the official, acting under color of state law, subjected or caused the complainant to be subjected to a deprivation of a right secured by the Constitution and laws. *Rizzo v. Goode*, 423 U.S. 362 (1976). The plaintiff must demonstrate an affirmative link between the conduct of the individual supervisor and the alleged deprivation. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990); *Gates v. Unified Sch. Dist.*, 996 F.2d 1035, 1042 (10th Cir. 1993) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)) ("a claim seeking personal liability in a civil rights suit must be predicated on the defendant actor's personal involvement; there must be an affirmative link to causally connect the actor with the alleged violation."). A defendant is sufficiently involved in a constitutional violation if he or she directly participates in the conduct causing the deprivation, fails to remedy the alleged wrong after learning of it, creates a policy or custom under which the unconstitutional practices occur, or is grossly negligent in managing subordinates. *Wright v. Smith*, 21 F.3d 496, 501 (2nd Cir. 1994).

In the present case, the Amended Complaint alleges that customs and/or policies of the City which were adopted or acquiesced to by the Supervisory Defendants resulted in the unconstitutional assault against Campbell. As noted above, the policies at issue include: (1) a policy of physical and verbal abuse of BCDC inmates and of refusal to grant inmates access to medical care and legal counsel; (2) procedures for investigating allegations of abuse and disciplining officers which have allowed abusive correctional officers to stay on the job and have encouraged the physical abuse of inmates by skewing the investigative process and insulating officers from liability or punishment for their actions; (3) a custom or policy of housing inmates with more dangerous individuals and without adequate supervision; and (4) the failure to properly train correctional officers at BCDC. The Amended Complaint alleges that these customs or practices were adopted either intentionally or with deliberate indifference and were the "moving force and/or the casual link to the Constitutional deprivations."

Defendants do not challenge the principle that a municipality or its supervisory employees may be found liable under § 1983 based on a policy or custom which caused the constitutional deprivation if such policy or custom demonstrates deliberate indifference to the rights of individuals. Rather, the City and the Supervisory Defendants argue that Plaintiff has failed to allege sufficient facts to demonstrate such a policy or custom, deliberate indifference, or a causal link, asserting that Plaintiff's Complaint contains nothing more than "conclusory allegations."

While the original Complaint was indeed short on detail, the Amended Complaint errs on the other side. Specifically, the Amended Complaint describes the customs or policies at issue as follows:

> ¶ 23. Defendants maintain a purposefully fragmented system for investigating complaints of abuse of persons inside the jail. This system does result in both inadequate investigation of such complaints and also assignments of inmates to areas

where they should not be housed because inadequate supervision is provided in these areas.

¶ 24. Complaints against Defendants are investigated by management within the Defendants' departments, creating a responsibility which conflicts with their duties.

¶ 25. Defendants involve themselves in investigations that concern allegations of abuse by inmates or BCDC employees and are conducted pursuant to a number of practices which Defendants acquiesce in, condone and/or approve, while protecting abusive inmates or BCDC officers from effective investigation and appropriate sanction. . . .

¶ 31. The Defendants enjoy or direct, have initiated, approved, enforced, and pursued internal administrative policies at BCDC which result in practices and procedures which directly contribute to and result in physical abuse of BCDC inmates and other denials of rights of persons in New Mexico. Such policies, practices and procedures include, but are not limited to:

A. Maintenance of investigative, disciplinary and related BCDC practices, policies and procedures in a manner that is calculated to, and does result in, the acquiescence in and condonation and approval of such denials of rights by BCDC employees and correction officers;

B. Maintenance of policies, practices and procedures by the Defendants that are calculated to insulate, and do result in insulating, the BCDC employees and corrections officers from external investigation and sanction for such denial of rights;

C. Acquiescence in, condonation of, and approval of such policies, practices and procedures that raise incidents of physical abuse and other denials of rights to the level of a pattern or practice. . . .

¶ 33. The Defendants involve themselves in investigations that concern allegations of abuse by the BCDC officers and are conducted pursuant to a number of practices which Defendants acquiescence in [sic], condone, and approve of abuse while protecting abusive BCDC officers from effective investigation and appropriate sanction. Such practices include:

A. Pressuring complainants about abuse to withdraw their complaints, which is used as one of several pretexts to close such investigations prematurely or even where there is substantial evidence of abuse.

B. Preparing statements from BCDC correctional officers and witnesses in a manner calculated to justify the conduct of the officers under investigation regardless of the actual circumstances;

C. Accepting implausible accounts given by the BCDC officers under investigation as reasons to condone their unlawful behavior;

D. Conducting investigations which intentionally exclude evidence that would tend to impeach the credibility of the BCDC corrections officers, such as statements from BCDC inmate witnesses, the officers' backgrounds, the views of the prisoner's attorney, physical evidence, and evidence about the scene of the incident; and

E. Compiling reports which justify the accused BCDC officer's conduct, regardless of the actual circumstances and rarely, if ever, recommending discipline for BCDC corrections officers.

¶ 34. The Defendants have pursued, and continue to pursue, disciplinary practices by which they acquiesce in, condone, and approve the abuse of inmates. Through such practices the Defendants have maintained control of the operation of the BCDC investigatory and disciplinary systems, and despite the fact that they have been familiar with facts of individual incidents of abuse and the frequent commission of abuse by the BCDC officers. These practices include, but are not limited to:

A. Commending and promoting BCDC corrections officers and staff whom the Defendants know, or should have know [sic], have abused inmates; and

B. Refusing to suspend or discipline individual BCDC officers when the Defendants know, or should have know [sic], that such officers physically abuse inmates.

¶ 35. The Defendants have pursued, and continue to pursue, inadequate training for and/or supervision or discipline of BCDC correctional officers and staff, which result in a pattern of abuse of persons by the BCDC employees, including:

A. Failing or refusing to provide sufficient training for new and veteran BCDC officers in the use of force, including deliberate refusal to instruct them on when not to use force against inmates, especially psychologically impaired ones;

B. Failing or refusing to provide sufficient training and periodic reinforcement concerning when not to use force and requiring qualification in the use of force for promotion;

C. Failing or refusing to provide psychological services and screening to aid BCDC officers in dealing with stress and to eliminate BCDC officers with a known propensity to abuse persons;

D. Failing or refusing to provide sufficient supervision for Defendants CO in the use of force and failing to provide sufficient supervision of the inmates in the jail protecting inmates against other inmates.

As these passages demonstrate, Plaintiff's Amended Complaint goes far beyond the "conclusory allegations" complained of by Defendants. The Amended Complaint alleges specific customs or policies adopted or acquiesced to by the City and the Supervisory Defendants, articulating what aspect of those policies is deficient and explaining how those policies directly resulted in the correctional officers' physical abuse of Campbell. The Amended Complaint further alleges that these policies were adopted intentionally or with deliberate indifference. Whether Plaintiff can prove these claims at trial is not the issue here. *Scheuer*, 416 U.S. at 236. Plaintiff has amply articulated specific facts to state a claim for municipal and supervisory liability against the City and the Supervisory Defendants. Therefore, dismissal of the claim pursuant to Rule 12(b)(6) is not appropriate.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Amend Complaint **[Doc. 32]** is **GRANTED** and Defendants' Motion to Dismiss with Prejudice **[Doc. No. 36]** is hereby **DENIED**. Discovery in this case will remain closed.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
        Anthony James Ayala

Attorneys for Defendants:
        Jeffrey Baker